# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

KEVIN JOHNATHAN SORRICK,

    Plaintiff,

    v.

DOCTOR LAWRENCE MANNING,
DOCTOR JASON CLEM,
DOCTOR PAUL MATERA,
SARA JENKINS,
*Medical Dept. Manager/Supervisor Registered Nurse,*
REGISTERED NURSE JENNIFER PATTERSON,
REGISTERED NURSE NANCY BEALER,
PHYSICIANS ASSISTANT PETER STANFORD,
SECRETARY STEPHEN MOYER,
LT. GENESIS COPELAND,
LT. EVAN WARD,
CORRECTIONAL OFFICER SHANIKA GUSTUS,
CORRECTIONAL OFFICER BERNARDO HANDY,
TWO UNKNOWN TRANSPORTATION OFFICERS,
WEXFORD UTILIZATION REVIEW MANAGEMENT COLLEGIAL,
WEXFORD HEALTH SOURCES, INC. and
CORIZON MEDICAL SERVICES,

    Defendants.

Civil Action No. TDC-16-0709

---

## MEMORANDUM OPINION

Self-represented Plaintiff Kevin Johnathan Sorrick, who is currently incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland, has brought this civil rights action under 42 U.S.C. § 1983 against various prison officials and medical providers in

connection with medical care he received for a shoulder injury sustained while in custody. Defendants Wexford Health Sources, Inc. ("Wexford"), Dr. Lawrence Manning, Dr. Jason Clem, Dr. Paul Matera, Sara Jenkins, R.N., Jennifer Patterson, R.N., Nancy Bealer, R.N., and Peter Stanford, P.A. (collectively, the "Medical Defendants") have filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, as have Defendants Stephen Moyer, Secretary of the Maryland Department of Public Safety and Correctional Services ("DPSCS"); Kathleen Green, former Warden of ECI ("Warden Green"); Lt. Genesis Copeland; Lt. Evan Ward; Correctional Officer II Shanika Gustus; and Correctional Officer II Bernardo Handy (collectively, the "State Defendants"). Sorrick opposes the Motions. The Court finds that a hearing is not necessary for the disposition of the Motions. *See* D. Md. Local R. 105.6. For the following reasons, both Motions are granted.

## BACKGROUND

### I.    Injuries and Treatment

On June 24, 2013, Sorrick injured his right shoulder while lifting weights in the prison yard. While attempting to bench press 50 pounds of weight, Sorrick was unable to complete the movement and heard a ripping sound in his right shoulder as he dropped the barbell behind him with his arms fully extended. Sorrick could not move his right shoulder after the injury, but he had to wait until the next morning to submit a sick call request. Sorrick took over-the-counter pain relievers and the swelling went down, but his shoulder remained painful, and he could hear cracking and popping sounds when it moved.

The Amended Complaint and the verified medical records attached to the Medical Defendants' Motion describe the treatment Sorrick received for the injury between 2013 and 2017. Sorrick states that, at first, "[t]he medical staff assumed as I did, that it would just heal

and go away." Am. Compl. Attached Sheet #3 at 2, ECF No. 44-4. Between 2013 and 2017 Sorrick was provided with treatment including anti-inflammatory and pain-relieving medications, cortisone shots, x-rays, magnetic resonance imaging ("MRIs"), physical therapy, consultations with an orthopedic surgeon, and eventually surgery to repair the shoulder. However, none of these treatments provided permanent pain relief.

The Medical Defendants were first made aware of Sorrick's shoulder injury during a July 24, 2013 medical clinic visit for chronic lower back pain stemming from motor vehicle accidents. Sorrick reported that he had hurt his right shoulder but could still lift weights. He was prescribed pain medication. Between October 2013 and September 2014, Sorrick continued to seek medical care for his shoulder and was prescribed additional pain medication and cortisone shots. An x-ray of the shoulder on November 22, 2013 showed no abnormalities. Although Sorrick was advised not to engage in weightlifting or pull-ups, Sorrick continued to engage in both.

From November 14, 2014 through December 9, 2014, Sorrick participated in physical therapy for his shoulder pain. The physical therapist observed a visible deformity of the right A-C joint, diminished sensation in Sorrick's right hand, and shoulder girdle weakness. Sorrick claims that the physical therapist told him that he might need surgery. He states that the physical therapy sessions did not help with the pain but instead aggravated his injury.

On January 20, 2015, Sorrick had an orthopedic consultation with Defendant Lawrence A. Manning ("Dr. Manning") at Jessup Correctional Institution ("JCI"). According to Sorrick, Dr. Manning told him that he would need surgery and sent him to receive an x-ray, but after the x-ray was taken, Dr. Manning was no longer in the office to review the images and complete the

consultation. Despite Sorrick's request that the x-rays be left for Dr. Manning, a JCI correctional officer sent the x-rays back to ECI, where they were apparently lost.

On several occasions over the next few months, Sorrick asked various providers to schedule another orthopedic consultation. He asserts that in March 2015 he was referred for a consultation with an orthopedic surgeon, and in June 2015 he learned that the referral was approved but no appointment had been scheduled. After Sorrick filed a complaint about the lack of an orthopedic consultation, the request was resubmitted and approved on November 25, 2015. Sorrick had a second orthopedic consultation with Dr. Manning on December 8, 2015 at JCI. It was not possible for Sorrick to receive an x-ray that day, but Dr. Manning ordered an MRI.

Sorrick received an MRI of his shoulder on March 18, 2016. The MRI revealed a rotator cuff tear. During a visit on May 3, 2016, Dr. Manning, having concluded that conservative measures had failed adequately to relieve Sorrick's pain, recommended an evaluation for decompression and rotator cuff repair surgery.

On October 12, 2016, an orthopedic surgeon examined Sorrick and also recommended surgery on his injured shoulder. Sorrick was officially approved for surgery on October 21, 2016. He was supposed to undergo surgery in November 2016, but the surgery was delayed due to an infection in his nasal passage. He was again cleared for surgery in December 2016, but the surgery had to be rescheduled because he failed to refrain from eating solid food the night before.

Sorrick underwent surgery on his injured shoulder at JCI on January 12, 2017. He returned to ECI on January 13, 2017 and was discharged to the general population on January 17, 2017. He began physical therapy on January 27, 2017. On February 22, 2017, his stitches were removed, and he was prescribed four more weeks of physical therapy. Sorrick continues to be

seen regularly as a chronic care inmate and may seek more immediate medical care through the use of the prison sick call process.

Sorrick also alleges two other incidents that caused him injury. First, on October 17, 2014, Sorrick was handcuffed prior to being transported to JCI for a post-conviction hearing. The officer who applied the handcuffs affixed them too tightly, causing numbness in Sorrick's right hand. Sorrick complained about the pain, but he was told the handcuffs were as loose as possible. The numbness and pain caused by the handcuffs was later treated through physical therapy, but the physical therapist told Sorrick that it could take up to four months for normal blood flow and function to return to his hand. Second, on March 18, 2016, Sorrick was transported to the Peninsula Regional Medical Center ("PRMC") for the MRI appointment. As he was exiting the transport van, Sorrick's foot shackle became tangled, causing him to trip, miss the step out of the van, and fall onto his injured right shoulder and side. He was authorized to receive ice for swelling. Sorrick states that he reported both incidents.

## II.    Administrative Complaints

Sorrick filed a number of administrative grievances about the failure to receive a second orthopedic consultation and other complaints about prison and medical staff. These grievances, and the manner in which they were handled, form the basis of his claim against the State Defendants that prison staff interfered with his medical treatment.

In particular, the following informal complaints and Administrative Remedy Procedure ("ARP") requests relate to Sorrick's claims against the State Defendants. As discussed above, after Sorrick received an orthopedic consultation with Dr. Manning in January 2015, he did not receive another until December 2015. On July 28, 2015, Sorrick attempted to submit an informal complaint regarding the medical staff's failure to provide him with an orthopedic consultation, ,

5

but when he gave it to Defendant CO II Bernardo Handy, CO II Handy informed Sorrick that a new policy required him to give the complaint to Defendant Lt. Genesis Copeland, the building supervisor. In a sworn statement attached to the State Defendants' Motion, CO II Handy agrees that he informed Sorrick of the "institutional policy to turn in the informal complaint to the building supervisor." Decl. of Bernardo Handy ¶ 5, State Defs.' Mot. Dismiss Ex. 2, ECF No. 79-3. He further states that to the best of his knowledge, Sorrick submitted the informal complaint to Lt. Copeland, and that he had no further involvement with Sorrick's medical issues.

Sorrick spoke with Lt. Copeland about the matter on July 30, 2015. Lt. Copeland told Sorrick that Defendant Jennifer Patterson, R.N. ("Nurse Patterson") had advised that Sorrick should just be patient. Although Lt. Copeland said that he would sign the informal complaint and provide Sorrick with a copy, Sorrick claims that he never received such a copy. In a sworn declaration attached to the State Defendants' Motion, Lt. Copeland states that he recalls that Sorrick submitted an informal complaint on or about July 28, 2015, and that he spoke with Nurse Patterson about it. Lt. Copeland recalls that Nurse Patterson stated that she would try to resolve the problem, but that Sorrick needed to be patient.

On August 16, 2015, Sorrick filed ARP No. ECI-1455-15, in which he complained about the medical treatment for his shoulder injury and specifically complained that he had not yet received an orthopedic consultation for surgery. He also alleged that Lt. Copeland had purposely violated the informal complaint procedures. He further claimed that Lt. Copeland's actions prolonged his pain. On August 18, 2015, Defendant CO II Shanika Gustus, the ECI ARP Coordinator, dismissed Sorrick's ARP because it related to more than one issue. Sorrick was told to resubmit the ARP by September 2, 2015 and to include only one issue. In a sworn Declaration attached to the State Defendants' Motion, CO II Gustus agrees that she dismissed the

6

August 16, 2015 ARP for procedural deficiencies but denies having acted to delay Sorrick's efforts to obtain medical treatment.

On August 30, 2015, Sorrick attempted to submit a revised ARP No. ECI-1455-15 to a correctional officer on his housing unit tier. The revised version was focused on the single issue of the medical staff's failure to provide an orthopedic consultation and did not assert a formal complaint about Lt. Copeland's handling of the informal complaint. Sorrick was advised that he had to submit the ARP to Lt. Copeland. Sorrick told the officer that he did not want Lt. Copeland to handle the ARP because he was concerned that Lt. Copeland would throw it away. The officer suggested that Sorrick give the ARP to a Sgt. Stanford instead. After Sorrick gave the ARP to Sgt. Stanford for processing, Sorrick discovered that Sgt. Stanford had passed it on to Lt. Copeland. In his Declaration, Lt. Copeland states that he has never thrown away an inmate's ARP or informal complaint.

On September 1, 2015, Lt. Copeland informed Sorrick that if the ARP had not been a resubmission, he would not have signed it because the medical staff had already advised Sorrick to be patient. Nevertheless, Lt. Copeland gave the ARP to Defendant Lt. Evan Ward, who accepted it for processing. Three days later, Sorrick received notice that his ARP had been accepted and stamped received by the Warden's office. Lt. Copeland denies having acted to delay Sorrick's treatment.

On September 24, 2015, Sorrick received a response to ARP No. ECI-1455-15 from the Warden, who found his complaint meritorious in part because he had not yet received the orthopedic consultation and stated that the request for a consultation would be resubmitted. Sorrick filed an appeal of the Warden's response with the Commissioner of Correction on October 19, 2015. On November 30, 2015, Sorrick received a response to his appeal in which

the Commissioner stated that his complaint was meritorious in part because he had yet to receive his orthopedic consultation and informed him that it would be scheduled soon. The consultation finally occurred in December 2015.

Sorrick also filed several other ARPs regarding his injury and treatment. On February 13, 2016, he filed ARP No. ECI-0312-16, requesting that he be scheduled for the MRI ordered by Dr. Manning on December 8, 2015, as well as a follow-up appointment with Dr. Manning; provided with copies of his medical records; advised of scheduled medical appointments in advance; and compensated with damages for pain and suffering caused by delays in medical treatment. The ARP, which included other complaints about the medical department, including a reference to ARP No. ECI-1455-15 and the request for an orthopedic consultation, was dismissed because it included more than one issue. Sorrick rewrote the ARP and resubmitted it on March 1, 2016. It was dismissed on April 7, 2016, after Sorrick received the MRI on March 18, 2016. Sorrick then filed an informal complaint requesting that Defendant Nancy Bealer, R.N. ("Nurse Bealer") submit a referral for a follow-up appointment, and he appealed the dismissal of the ARP to the Commissioner, claiming that the relief sought was not fully provided because he had not had a follow-up appointment with Dr. Manning. The Commissioner dismissed the appeal on May 27, 2016, after Sorrick had an appointment with Dr. Manning on May 3, 2016. The dismissal form observed that "[y]our care is ongoing and you will continue treatment and follow-up as required." Am. Compl. Ex. 57, ECF No. 46.

On April 1, 2016, Sorrick filed ARP No. ECI-0662-16, requesting copies of his medical records. It was dismissed on April 5, 2016 because it was not timely. Sorrick appealed the dismissal of the ARP to the Commissioner on April 8, 2016, and the Commissioner dismissed the appeal for the same reason. Sorrick appealed the Commissioner's response to the Inmate

8

Grievance Office ("IGO"). The IGO response, dated July 14, 2016, stated that Sorrick had "failed to state a claim upon which administrative relief can and should be granted" because the Maryland Code does not authorize the IGO to consider inmate grievances against a private health care contractor. Am. Compl. Ex. 70, ECF No. 46-4.

Sorrick also filed an informal complaint regarding alleged errors in his MRI results on July 16, 2016. He filed ARP No. ECI-1920-16 regarding the same issue, along with other alleged errors in his medical records, on August 24, 2016. The ARP was dismissed because the MRI report was corrected, Sorrick was seen by an orthopedic doctor with the corrected report, and Sorrick was soon to be scheduled for a follow-up visit to review the orthopedist's recommendations. Sorrick appealed the dismissal to the Commissioner, and he claims that the Commissioner found the claims to be meritorious, though the Commissioner's disposition of the matter is not in the record.

Sorrick also filed ARP No. ECI-2291-16, regarding access to the library, and a number of other ARPs that do not appear in the record.

### III. Sorrick's Claims

The Amended Complaint generally alleges that the medical and prison staff were deliberately indifferent to Sorrick's medical needs relating to his shoulder injury in violation of the Eighth Amendment to the United States Constitution. Sorrick claims that the Medical Defendants were careless and disorganized with respect to his medical treatment. He alleges that the medical staff repeatedly lost track of his medical records, such as x-rays and referrals for consultations, which impeded his access to timely care. He further asserts that on several occasions, appointments that were ordered by a physician were never made. According to Sorrick, the coordination between prison staff and the medical providers at various prison

locations was so disorganized that medical personnel admitted in an internal email chain that they could not determine "who did what" in his case or "what to do with me medically." Am. Compl. Attached Sheet # 3 at 12, ECF No. 44-4. Later, after Sorrick received an MRI of his injured right shoulder, the medical records incorrectly stated that the MRI was of his left shoulder. Sorrick frequently felt compelled to inform prison medical staff of physicians' recommendations directly, apparently because of a lack of coordination between staff. At one point, Sorrick was advised by medical staff that "nobody" responds to emails and that "the only way to get anything done around here" is to file an ARP. *Id.* at 32.

Sorrick claims that the Medical Defendants caused unnecessary delays in providing medical and administrative assistance, leading to pain and suffering in violation of the Eighth Amendment. He also alleges that the State Defendants unnecessarily delayed the processing of the informal complaint and ARPs about the medical staff's failure to provide an orthopedic consultation and otherwise to treat his shoulder injury, such that they, too, were deliberately indifferent to his medical needs. In his Opposition to the Motions, Sorrick also asserts that Lt. Copeland refused to allow him to switch to a lower bunk. Sorrick further claims that Defendants should have provided trained staff to ensure the safe use of weightlifting equipment and asserts that their failure to do so contributed to injuring him physically and psychologically. He seeks injunctive relief requiring that he be provided with medical treatment and pain medication; requiring that the Warden hire someone to ensure the safe use of free weights at ECI; and ensuring that no administrative or disciplinary measures that would alter his job assignment or assignment to an honor tier be taken against him because of his filing of this case. He also seeks damages for pain and suffering.

# DISCUSSION

## I. Non-Dispositive Motions

Currently pending before the Court are several non-dispositive motions filed by Sorrick and the Medical Defendants. The Motions filed by Sorrick are his "Motion for Physical Examination from Outside Orthopedic Doctor/Surgeon," ECF No. 42; "Motion for Complaint to be Changed/Classified as a Class Action," ECF No. 51; Motion for Appointment of Counsel, ECF No. 52; Motion for Entry of Default, ECF No. 56; "First Motion for Production of Documentation," ECF No. 60; "Motion to Deny Defendants' Opposition to Motion for Class Certification and/or In the Alternative; Motion to Reconsider Plaintiff's Motion for Complaint to be Changed/Classified as a Class Action," ECF No. 74; "Motion to Deny Defendants' Motion for Protective Order," ECF No. 75; "Motion to Reconsider and Deny Defendants' Motion for Extension of Time Nunc Pro Tunc to Respond to Plaintiff's Amended Complaint," ECF No. 76; "Motion to Deny Defendants' Opposition to Motion for Default Judgment," ECF No. 77; and "Motion for Supplemental Facts and Exhaustion of Legal Remedies and Responses," ECF No. 90. The Medical Defendants have filed a Motion for Protective Order, ECF No. 64, and a Motion to Seal, ECF No. 70.

### A. Discovery Motions

Sorrick's "Motion for Physical Examination from Outside Orthopedic Doctor/Surgeon," ECF No. 42, and "First Motion for Production of Documents," ECF No. 60, are in the nature of discovery requests. Discovery is not permitted in a case in which no scheduling order has been issued setting out discovery deadlines. *See* D. Md. Local R. 104.4. Accordingly, both Motions shall be denied, and the Medical Defendants' Motion for a Protective Order, ECF No. 64, which asserts that Sorrick's document requests are premature, will be granted. Because a protective

order is warranted, Sorrick's "Motion to Deny Defendants' Motion for Protective Order," ECF No. 75, will be denied.

## B. Class Action Motions

Sorrick's Motions seeking to convert this case into a class action lawsuit must also be denied. The Amended Complaint relates to an injury Sorrick sustained while lifting weights and his subsequent efforts to secure medical care for that injury. There is no allegation of a system-wide failure affecting a class of individuals who are similarly situated. *See* Fed. R. Civ. P. 23(a)(2) (requiring common questions of law or fact as a prerequisite for a class action lawsuit). In addition, the United States Court of Appeals for the Fourth Circuit has held that a *pro se*, imprisoned litigant may not act as a class representative. *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975). Accordingly, the "Motion for Complaint to be Changed/Classified as a Class Action," ECF No. 51, and the "Motion to Deny Defendants' Opposition to Motion for Class Certification and/or In the Alternative; Motion to Reconsider Plaintiff's Motion for Complaint to be Changed/Classified as a Class Action," ECF No. 74, will be denied.

## C. Appointment of Counsel

A federal district court may appoint counsel under 28 U.S.C. § 1915(e)(1) where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Upon careful consideration of Sorrick's filings, the Court finds that he has demonstrated the ability either to articulate the legal and factual basis of his claims himself or to secure meaningful assistance in doing so. Because no hearing is necessary to the disposition of this case, and there are no other exceptional circumstances that would warrant the appointment of an attorney, the Motion to Appoint Counsel, ECF No. 52, will be denied.

### D. Motion for Default

Sorrick's Motion for Entry of Default, ECF No. 56, asserts that a default judgment should be entered because Defendants did not timely respond to the Amended Complaint. A default occurs when a party being sued "has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Medical Defendants were granted extensions of time within which to file an Answer and thus timely filed their Motion on February 28, 2017. Accordingly, they are not in default. The State Defendants' Motion was filed on March 23, 2017, over three months past the deadline set by the Court and two months beyond the time limit for the State to respond as generally established in *In re State Prisoner Litigation*, Misc. No. 00-308, Standing Order 2012-01 (D. Md. 2012). Although the State Defendants improperly failed to respond in a timely manner, the Fourth Circuit strongly favors that cases be resolved on the merits. *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Thus, the Motion for Entry of Default will be denied. The "Motion to Deny Defendants' Opposition to Motion for Default Judgment," ECF No. 77, will also be denied.

Sorrick also filed a "Motion to Reconsider and Deny Defendants' Motion for Extension of Time Nunc Pro Tunc to Respond to Plaintiff's Amended Complaint," ECF No. 76, requesting that the Court revisit its Order granting Defendants additional time to respond to the Amended Complaint. Because the Amended Complaint involves numerous allegations spanning a two-year period of time, Defendants' motions for extensions of time were not unwarranted. The Motion to Reconsider will be denied.

### E. Supplemental Facts

The Motion for Supplemental Facts and Exhaustions of Legal Remedies, ECF No. 90, filed with Sorrick's Opposition to the State Defendants' Motion, asks the Court to consider the

evidence submitted with Sorrick's earlier motions in deciding the case. Because the Court has concluded that it is appropriate to consider matters outside the pleadings, the Motion will be granted and the Court will consider record materials submitted by Sorrick after the date the Amended Complaint was filed.

### F.     Motion to Seal

In the Motion to Seal, the Medical Defendants ask the Court to seal Exhibit 1 to the Medical Defendants' Motion to Dismiss, which contains Sorrick's medical records. ECF No. 70. The Court agrees with the Medical Defendants that Sorrick's personal information contained in the medical records should remain sealed to protect Sorrick's privacy. Accordingly, the Motion to Seal will be granted.

## II.     Motions to Dismiss or, in the Alternative, for Summary Judgment

### A.     Legal Standards

#### 1.     Motion to Dismiss

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

## 2.     Motion for Summary Judgment

Both the State Defendants and the Medical Defendants have submitted evidence for the Court's review. Although a party may move for summary judgment before the commencement of discovery, *see* Fed R. Civ. P. 56(b), "summary judgment [must] be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n.5 (1986)). The proper procedure for seeking additional time for discovery is to file an affidavit pursuant to Federal Rule of Civil Procedure 56(d) explaining why the party needs discovery to establish the existence of a genuine issue of material fact. *Id.* If a party does not submit a Rule 56(d) affidavit, the Court may, but need not, still consider a request for discovery presented in the non-movant's memorandum of law opposing summary judgment. *Id.* at 244-45. Because Sorrick has not submitted a Rule 56(d) affidavit or otherwise persuasively argued that discovery is necessary in order to establish the existence of a genuine issue of material fact, the Court construes both Motions as seeking summary judgment.

Under Federal Rule of Civil Procedure 56(a), the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a

genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

### B. Medical Defendants

#### 1. Wexford

Under 42 U.S.C. § 1983, individuals may sue in federal court "[e]very person" who, under color of state law, deprives them of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. Private companies that employ individuals acting under color of state law are considered "persons" for the purposes of § 1983, but they cannot be held liable for violating a plaintiff's rights solely because they employ an individual who committed an unlawful act. *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, they can be sued under § 1983 only if the violation results from the company's custom or policy. *Id. Cf. Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that there is no vicarious liability against local government entities for § 1983 claims).

Thus, while Wexford is responsible for the delivery of medical care in a prison setting, a duty that the Medical Defendants acknowledge is "a governmental function," Med. Defs' Mot. Dismiss at 18, ECF No. 69-3, absent a particular custom or policy that led to the deprivation of Sorrick's constitutional rights, Wexford cannot be held liable for his claims under § 1983. *See Austin*, 195 F.3d at 728. Here, Sorrick has alleged no specific custom or policy of Wexford that resulted in the loss of any rights. Accordingly, the claim against Wexford is dismissed.

## 2. Individual Medical Defendants

The Eighth Amendment to the United States Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). This safeguard not only bears on "those punishments authorized by statute and imposed by a criminal judgment," but also extends to "the treatment a prisoner receives in prison and the conditions under which he is confined." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (quoting *Helling v. McKinney*, 509 U.S. 25, 31 (1993)). Thus, claims relating to the denial or adequacy of medical care to incarcerated persons arise under the Eighth Amendment, because "the deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg*, 428 U.S. at 173).

An Eighth Amendment claim based on denial of medical care has both objective and subjective components. To state such a claim, an incarcerated plaintiff must establish that, "objectively assessed, he had a sufficiently serious medical need to require medical treatment," and that the defendant prison official was "subjectively aware of the need and of its seriousness" but "nevertheless acted with deliberate indifference to it by declining to secure available medical attention." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 104 (4th Cir. 1995). "Deliberate indifference" entails more than ordinary negligence or lack of due care for the prisoner's interests or safety; it instead requires that a prison official actually "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *De'Lonta*, 330 F.3d at 634 (stating that deliberate indifference requires "that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm"). "Actual knowledge or awareness" on the part of prison staff is essential to an Eighth Amendment

claim for denial of medical care, because prison officials who lacked knowledge of a medical risk cannot be said to have inflicted cruel and unusual punishment by withholding treatment. *Brice*, 58 F.3d at 105 (citing *Farmer*, 511 U.S. at 844). Deliberate indifference is an "exacting standard" that requires more than a showing of "mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). A disagreement between an inmate and a physician over proper medical care is not sufficient to show deliberate indifference. *Id.*

The evidence submitted by the Medical Defendants establishes that Sorrick's shoulder injury was addressed with conservative measures first and ultimately through surgery. Although the evidence demonstrates that Sorrick's shoulder caused him pain, there is no evidence that the Medical Defendants deliberately disregarded his pain. Rather, the evidence shows that Sorrick was repeatedly seen by registered nurses, physician's assistants, and doctors; received cortisone injections; was prescribed anti-inflammatory and pain-relieving medications; completed a course of physical therapy; and ultimately received surgery. He continues to receive treatment for his chronic pain. The fact that none of these treatments completely eradicated the shoulder pain does not lead to the conclusion that the Medical Defendants were deliberately indifferent to Sorrick's medical condition in violation of the Eighth Amendment.

The alleged misplacement of x-rays, delays in scheduling appointments and orthopedic consultations, and delay in diagnosing Sorrick's injury as a rotator cuff injury requiring surgery likewise do not support a claim of an Eighth Amendment violation. Deliberate indifference requires proof of a callous disregard for a serious medical need. *See Estelle*, 429 U.S. at 105-06. At most, the delays and other deficiencies described in the Amended Complaint amount to

negligence. However, negligence alone does not support an inference of deliberate indifference under the Eighth Amendment. *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998) ("[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."); *see also Jackson*, 775 F.3d at 178. Accordingly, the Medical Defendants are entitled to summary judgment in their favor on the Eighth Amendment claim against them.

### 3. Corizon Medical Services, Inc. and Wexford Utilization Review/ Management Collegial

It does not appear that Defendants Corizon Medical Services ("Corizon") and Wexford Utilization Review/Management Collegial ("WURMC") were ever properly served in this case. However, the Court is required to screen prisoner complaints and dismiss any complaint that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e), 1915A(b) (2012). To the extent that Sorrick has made allegations against Corizon and WURMC in the Amended Complaint, he has failed to state a claim against them for the same reason that he has not alleged a viable claim against Wexford. *See supra* part II.B.1. Thus, the claims against Corizon and WURMC will be dismissed without requiring further efforts to serve these defendants.

### C. State Defendants

#### 1. Official Capacities

The State Defendants seek dismissal of the claims against them in their official capacities pursuant to Eleventh Amendment immunity. Although the State Defendants' Eleventh Amendment argument would appear to implicate this Court's jurisdiction, *see Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (noting that "the Eleventh Amendment is jurisdictional in the sense that it is a limitation on the federal court's judicial power"), the Court must turn first to the statutory argument that the State Defendants in their official capacities are not "persons"

within the meaning of § 1983. *Vt. Agency of Nat. Res. v. U.S. ex. Rel. Stevens*, 529 U.S. 765, 779 (2000) (finding that the question whether a statute permits a cause of action against states should be addressed before the question whether the Eleventh Amendment bars the cause of action); *Power v. Summers*, 226 F.3d 815, 818 (7th Cir. 2000) (noting that pursuant to *Vermont Agency of Natural Resources*, the district court should have dismissed claims against state officials in their official capacities on the grounds that they were not persons within the meaning of § 1983 rather than on Eleventh Amendment grounds).

Section 1983 makes liable "[e]very person" who, under color of state law, deprives an individual of constitutional rights. 42 U.S.C. § 1983 (2012). Though "state officials literally are persons," a lawsuit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). State officials acting in their official capacity are therefore not "persons" for purposes of § 1983, and are not proper defendants to a § 1983 lawsuit. *See id.*; *see also Goodman v. Rockefeller*, 947 F.2d 1186, 1187 (4th Cir. 1991) (per curiam). Accordingly, the State Defendants' Motion is granted as to the claims against them in their official capacities, and the Court need not, and does not, address their alternative arguments for dismissing the official capacity claims.

### 2. Exhaustion of Administrative Remedies

The State Defendants assert that Sorrick's remaining claims against the State Defendants should be dismissed because he failed to exhaust his administrative remedies against them as required by the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a). An inmate's failure to exhaust administrative remedies is an affirmative defense most appropriately considered on a motion for summary judgment. *Jones v. Bock*, 549 U.S. 199, 211-12 (2007).

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This exhaustion requirement serves a valuable function by "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones*, 549 U.S. at 219. Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016). Thus, upon proof that Sorrick has failed to exhaust a claim, Defendants are entitled to dismissal of the unexhausted claims. *See Jones*, 549 U.S. at 211-12 (holding that failure to exhaust is an affirmative defense and stating that "unexhausted claims cannot be brought in court").

An inmate need only exhaust "available" remedies, and "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). But the exhaustion requirement demands that an inmate follow the prison's "applicable procedural rules" so that the prison has an opportunity to address the claim administratively. *Id.* (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit under § 1983. *Booth v. Churner*, 532 U.S. 731, 734-35 (2011); *Chase v. Peay*, 286 F. Supp. 2d 523, 529-30 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Inmates in Maryland state prisons may present their complaints to prison officials through the ARP, which has three steps: an initial request for relief from the warden, an appeal

of the warden's denial to the Commissioner of Corrections, and an appeal of Commissioner's denial to the IGO. Md. Code Regs. 12.07.01.04 (2017). Inmates may seek judicial review of the IGO's final determinations in a Maryland Circuit Court. Md. Code Ann., Corr. Servs. § 10-210 (West 2002).

According to the State Defendants, Sorrick has failed to demonstrate that he pursued appeals of his ARPs against the State Defendants all the way to the IGO. The State Defendants rely on the declaration of Russell A. Neverdon, Sr., the Executive Director of the IGO and the custodian of IGO records, in which Neverdon states that Sorrick "has not filed any complaints or grievances with the IGO arising from an injury suffered on June 24, 2013." State Defs.' Mot. Dismiss Ex. 6 ¶ 3, ECF No. 79-7.

Sorrick, however, contends that he did exhaust his ARPs, and that in any event a notice of claim that he filed on June 18, 2014, pursuant to the Maryland Tort Claims Act ("MTCA"), Md. Code Ann., State Gov't §§ 12-1-1 to 12-110 (West 2015), provided the State Defendants with sufficient notice of his claims. Sorrick also argues that the handling of the ARPs he did file was so deficient that the ARP process was not "available" to him within the meaning of § 1997e(a).

The argument that the MTCA notice of claim satisfied the exhaustion requirement is unavailing. The ARP, not the MTCA process, constitutes the prison's "applicable procedural rules" that must be followed to effect exhaustion. *Moore*, 517 F.3d at 725; *see also* Md. Code Ann., Corr. Servs. § 10-206(b); *Chase*, 286 F. Supp. 2d at 530. The Court also rejects the claim that the ARP process was not available to Sorrick. Although Sorrick has complained that he was required to follow certain procedures, such as limiting an ARP to one issue and submitting ARPs to a central official, the record reflects that once those procedures were followed, the Warden

provided responses. With respect to ARP No. ECI-1455-15, Warden Green in fact agreed with Sorrick that an orthopedic consultation needed to be scheduled. When Sorrick appealed that ARP to the Commissioner of Correction, he again received a response reaching the same conclusion.

Sorrick's claim that he was misled into believing that the IGO level of appeal was unavailable to him because the Commissioner's responses ended with "No further action is warranted through the ARP process" is unpersuasive, because that statement does not foreclose an appeal to the IGO, and the Commissioner's response also contained the language, "You may appeal this response by following the procedure prescribed on the back of the form." Am. Compl. Ex. 13, ECF No. 44-18 at 6. The back side of that form instructs inmates on both how to appeal the Warden's response to the Commissioner and how to appeal the Commissioner's response to the IGO. *See, e.g.*, Am. Compl. Ex. 85 at 2, ECF No. 46-10. Moreover, the IGO appeal process is set forth in Maryland regulations, and Sorrick has demonstrated his knowledge of that process by appealing to the IGO on other ARPs. Finally, although Sorrick correctly notes that the IGO informs inmates that it cannot address claims against medical providers, that fact does not excuse the failure to appeal to the IGO a claim against correctional officers such as the State Defendants.

As for Sorrick's argument that he, in fact, satisfied the exhaustion requirements, the claims raised against the State Defendants center on (1) their alleged failure timely to process an informal complaint and ARP No. ECI-1455-15 seeking an orthopedic consultation, thus displaying deliberate indifference to Sorrick's medical needs; (2) their alleged failure to provide a trained weightlifting instructor to supervise inmates; (3) their allegedly improper refusal to grant Sorrick the right to use a lower bunk in the absence of a medical determination that it was

necessary; and (4) the conduct of the two unknown transportation officers present when Sorrick was injured while in transit to JCI. None of the ARPs submitted and resolved before the filing of the Amended Complaint specifically asserted these complaints about the State Defendants. Although ARP No. ECI-1455-15 and ARP No. ECI-0312-16 referenced some of the State Defendants' actions in processing the ARPs, neither specifically alleged misconduct by any of the State Defendants or sought relief directing any particular action by correctional officers. Even if ARP No. ECI-1455-15 and ARP No. ECI-0312-16 could be construed as asserting a complaint about not just the medical staff's inaction, but also the State Defendants' slow processing of his complaints, the State Defendants have established that Sorrick did not appeal these ARPs to the IGO, and Sorrick presents no evidence demonstrating that he did so. ARP No. ECI-0662-16, which Sorrick did appeal to the IGO, relates to a request for medical records, not the alleged violations by the State Defendants asserted here. *See* Am. Compl. Ex. 38, ECF No. 45-10. ARP No. ECI-1920-16, which was not appealed to the IGO, complains about only the Medical Defendants. ARP No. ECI-2291-16, which was also not appealed to the IGO, does not relate to the events in the Amended Complaint. None of these ARPs address the two unknown transportation officers, discuss the failure to provide a weightlifting instructor, or complain that the State Defendants failed to permit Sorrick to switch to a lower bunk because of his shoulder injury. Sorrick thus has not offered any evidence that, contrary to the IGO Executive Director's representation that there was no appeal filed with the IGO relating to any claim arising from his shoulder injury, he exhausted the claims asserted against the State Defendants. Accordingly, the Court finds that the claims against the State Defendants are subject to dismissal because they were not administratively exhausted.

### 3.  Correctional Officers

Even assuming that Sorrick had exhausted all available administrative remedies, Sorrick's claims also fail on the merits.  Sorrick's claim against State Defendants Lt. Copeland, Lt. Ward, CO II Gustus, and CO II Handy appear to be that they improperly delayed his medical care by failing properly to process his filing of ARPs and informal complaints relating to inaction by the medical staff, which he designated as emergency requests.  He further claims that any time one of his ARPs was sent back to him for resubmission or he was directed to submit the request to a different staff member, those delays needlessly contributed to his suffering.  Sorrick asserts that any departure from established prison policy on the processing of his complaints is evidence that the staff members violating those policies were indifferent to his suffering.

To establish liability for a delay in medical care against correctional staff who are not charged with providing medical care itself, a plaintiff must demonstrate that (1) the defendants failed promptly to provide an inmate with needed medical care; (2) the defendants deliberately interfered with the prison doctors' performance; or (3) the defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990) (internal citations omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Estelle*, 429 U.S. at 104-05 (stating that prison guards may be liable for deliberate indifference to serious medical needs by "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

Sorrick does not allege, nor does the evidence suggest, that Lt. Copeland, Lt. Ward, CO II Gustus, or CO II Handy personally denied treatment to Sorrick.  Nor did any of these Defendants deliberately interfere with the prison medical staff's performance of their duties or

otherwise interfere with the prescribed medical care Sorrick was receiving. Indeed, as discussed above, the treatment provided by the medical staff was not constitutionally deficient.

The State Defendants' actions relating to the processing of Sorrick's informal complaint and ARP seeking an orthopedic consultation also do not support a conclusion of deliberate indifference. Lt. Copeland, Lt. Ward, CO II Gustus, and CO II Handy each assert that their actions were timely and in accordance with applicable policy. To the extent that the State Defendants required that an ARP be submitted to a designated officer pursuant to prison policy, or that CO II Gustus required Sorrick to resubmit an ARP for procedural reasons because it contained more than one issue, those actions do not support the inference that the State Defendants intentionally delayed the processing of the ARP out of deliberate indifference to Sorrick's medical needs. Lt. Copeland's single reference to a nurse's comment that Sorrick should be "patient" with the medical staff also does not reveal deliberate indifference, particularly on the part of the correctional officer. Finally, Sorrick's concern that Lt. Copeland would lose his ARP proved unfounded: it was received by the Warden, who agreed with Sorrick that an orthopedic consultation was necessary. The evidence therefore does not support a finding of deliberate indifference by the State Defendants arising from the processing of Sorrick's informal complaint and ARP.

As for Sorrick's allegation, first raised in his Opposition, that Lt. Copeland would not allow him to switch to a lower bunk without a medical order showing that such a switch was required, this claim does not appear in the Amended Complaint, and Sorrick has not demonstrated that it was administratively exhausted. In any event, this claim does not constitute deliberate indifference to a serious medical need. *See Jones v. McKendrick*, No. RWT-12-651, 2012 WL 6727171, at *3 (D. Md. Dec. 21, 2012) (finding that failure to approve a medical order

26

requiring assignment to a lower bunk was not deliberate indifference to a serious medical need where the plaintiff's injury was being addressed through pain medication and knee braces). There is no evidence that Lt. Copeland acted in contravention of any order or request by medical staff that Sorrick should be assigned only to a lower bunk for medical reasons.

In summary, there is no evidence that these Defendants specifically withheld medication, sabotaged Sorrick's appointments, or otherwise "deliberately or recklessly ignore[d] an excessive risk to" Sorrick's health. *Turner v. Knight*, 121 F. App'x 9, 14 (4th Cir. 2005). Accordingly, Lt. Copeland, Lt. Ward, CO II Gustus, and CO II Handy are entitled to summary judgment in their favor on the claims relating to delays in medical care.

### 4. Supervisory Liability

Sorrick seeks to impose liability on Secretary Moyer and Warden Green because, he asserts, they are "legally responsible" for the well-being of all prisoners in the custody of the Maryland Division of Correction. Am. Compl. at 8 ¶¶ 1-2, ECF No. 44. The State Defendants seek dismissal of these claims because Sorrick has not demonstrated that they played any personal role in the activities underlying Sorrick's claims.

Because the pleadings of self-represented litigants should be construed liberally, *see Erickson*, 551 U.S. at 94, the Court will treat the Complaint as alleging that both Secretary Moyer and Warden Green have supervisory liability for any unconstitutional actions by the other State Defendants. In § 1983 cases, however, there is no vicarious liability (*respondeat superior*) against government officials for the acts of their subordinates. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Instead, where the defendant is alleged to have acted in a supervisory capacity, the plaintiff must prove: (1) that the supervisor had actual or constructive knowledge that the subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of

constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *Shaw v. Stroud*, 13 F.3d 791, 798-99 (4th Cir. 1994). Establishing a "pervasive and unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has occurred on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Id.* at 799.

Apart from his general allegation that Secretary Moyer is legally responsible for inmate well-being, Sorrick makes no other specific allegations about his conduct. Accordingly, the claims against Secretary Moyer will be dismissed.

Although the Amended Complaint does not allege specific facts about Warden Green's conduct, Sorrick has filed copies of several ARPs that he submitted with respect to his medical care that were stamped "Received Warden's Office – Eastern Correctional Institution." Sorrick claims that the stamp shows that Green read the ARPs, which stated that they were emergency requests that posed a continuing threat to his health, and nevertheless disregarded them. First, because the Court has found no § 1983 liability by any of the subordinate State Defendants, there can be no supervisory liability by Warden Green. Second, even if there were a violation by one or more subordinate officers, Warden Green's timely response to ARP No. ECI-1455-15, 18 days after receiving it, was to approve the request for an orthopedic consultation. Thus, the evidence does not support a finding of "tacit authorization" of an unconstitutional practice or "an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered." *Shaw*, 13 F.3d at 799.

Sorrick's claim that his constitutional rights were violated because Warden Green did not provide staff to instruct inmates on safe weightlifting technique must be dismissed because it was not exhausted. Even if Sorrick had exhausted this claim, however, it would still fail. A prison official's duty under the Eighth Amendment is to ensure "reasonable safety," *Farmer*, 511 U.S. at 844, and Sorrick has not demonstrated that the failure to employ a weight training instructor was unreasonable. The United States Supreme Court has held that prison administrators are to be accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547-48 (1979). "[A]bsent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." *Torcasio v. Murray*, 57 F.3d 1340, 1345-46 (4th Cir. 1995) (quoting *Taylor v. Freeman*, 24 F.3d 266, 286 94th Cir. 1994)). The Court finds no constitutional violation arising from the lack of a supervisor for the free weight area at ECI. The claims against Warden Green will therefore be dismissed.

### 5. Two Unknown Transportation Officers

Finally, Sorrick also asserts that he was injured on two different occasions during transportation to other locations for purposes of receiving medical care. He further asserts that because the State Defendants did not respond to this allegation in their dispositive motion, they have admitted that the injury occurred. Because neither transportation officer has yet been identified and thus has not been served, the lack of a response to the claims against them is of no legal significance. No responsive pleading is due unless and until the complaint is served. *See* Fed. R. Civ. P. 12(a).

Even if the transportation officers had been served with the complaint, the claims relating to their conduct are subject to dismissal because Sorrick has not exhausted them. Nor has Sorrick stated a plausible claim of a constitutional violation. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b) (directing the district court to review indigent *pro se* prisoner claims against government officials for whether they state a claim). Because Sorrick's complaint seeks relief under 42 U.S.C. § 1983 for constitutional violations, the Court construes these allegations as Eighth Amendment claims of excessive force. Force used by a correctional officer is excessive and in violation of the inmate's constitutional rights when the correctional officer "inflicted unnecessary and wanton pain and suffering," a determination which turns on whether the force "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992). Here, Sorrick alleges that he told the officer about his shoulder injury when the officer was handcuffing him, that he complained the handcuffs were too tight, and that the officer told him they were as loose as he could make them. To the extent the handcuffs either caused the pain or exacerbated pain that was already a problem, Sorrick's allegations about the officer's conduct do not support a finding that the officer ignored a medical order relating to the handcuffing of Sorrick or acted maliciously or sadistically to cause harm.

As for the incident when Sorrick fell out of a transport van, Sorrick does not allege any excessive force, but instead acknowledges that he tripped over the shackles he was wearing and was later given ice for the resulting swelling. Under these circumstances, Sorrick's allegations do not state a claim for excessive force under the Eighth Amendment. Accordingly, pursuant to 28 U.S.C. § 1915A(b), the Court concludes that the claims against the unknown transportation officers will be dismissed without requiring further efforts to serve the officers involved.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.  The Motion for Physical Examination from Outside Orthopedic Doctor/Surgeon, ECF No. 42, is DENIED.

2.  The Motion for Complaint to be Changed/Classified as a Class Action, ECF No. 51, is DENIED.

3.  The Motion for Appointment of Counsel, ECF No. 52, is DENIED.

4.  The Motion for Entry of Default, ECF No. 56, is DENIED.

5.  The First Motion for Production of Documentation, ECF No. 60, is DENIED.

6.  The Motion for Protective Order, ECF No. 64, is GRANTED.

7.  The Medical Defendants' Amended Motion to Dismiss, or, in the Alternative, for Summary Judgment, ECF No. 69, is GRANTED.

8.  The Motion to Seal, ECF No. 70, is GRANTED.

9.  The Motion to Deny Defendants' Opposition to Motion for Class Certification and/or in the Alternative; Motion to Reconsider Plaintiff's Motion for Complaint to be Changed/Classified as a Class Action, ECF No. 74, is DENIED.

10. The Motion to Deny Defendants' Motion for Protective Order, ECF No. 75, is DENIED.

11. The Motion to Reconsider and Deny Defendants' Motion for Extension of Time Nunc Pro Tunc to Respond to Plaintiff's Amended Complaint, ECF No. 76, is DENIED.

12. The Motion to Deny Defendants' Opposition to Motion for Default Judgment, ECF No. 77, is DENIED.

13. The State Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment, ECF No. 79, is GRANTED.

14. The Motion for Supplemental Facts and Exhaustions of Legal Remedies, ECF No. 90, is GRANTED.

15. The Clerk is directed to CLOSE this case.

Date: August 22, 2017

THEODORE D. CHUANG
United States District Judge